IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

T&R Properties, Inc., et al.,

          Plaintiffs,

v.

Berlin Township, et al.,

          Defendants.

Case No. 2:24-cv-3761

Judge Graham

Magistrate Judge Jolson

<u>Opinion and Order</u>

This zoning and development dispute is before the Court on a motion to intervene filed by Fair Housing Advocates Association, Inc. (FHAA). According to FHAA, it has a right to intervene under Federal Rule of Civil Procedure 24(a), or, in the alternative, it should be allowed to permissively intervene under Rule 24(b). For the reasons which follow, the motion is denied.

**I.    Nature of the Action**

Plaintiffs T&R Properties, Inc. and its related entities bring suit against defendants Berlin Township and Berlin Township's Board of Trustees, Zoning Commission, and Board of Zoning Appeals. T&R purchased parcels of land for intended mixed commercial and residential use. T&R's development plans allegedly accorded with the Township's "Comprehensive Plan" for zoning and development. In particular, T&R sought to develop residential housing, including apartments, that would be at an affordable price point for lower-income individuals and would expand housing opportunities for racial minorities in Berlin Township. T&R further alleges that its plans complied with all applicable zoning requirements, including those regarding dwelling unit density.

The complaint alleges that Berlin Township denied T&R's applications for approval of its proposed developments and did so with a motive to preclude lower income individuals and racial minorities from moving into the Township. T&R contends that the Township's purpose is to build a "Berlin Wall" which deprives minorities the opportunity to live in the Township and enjoy its advantages, including access to its school system.

1

The complaint asserts two claims under the Fair Housing Act, 42 U.S.C. § 3601: a claim for intentional discrimination against racial minorities and another for disparate impact discrimination. The complaint also asserts claims for violations of T&R's substantive due process and equal protection rights under the Fourteenth Amendment of the United States Constitution. The Fourteenth Amendment claims are based on the Township's denial of T&R's right to use and develop its land. Finally, the complaint asserts a claim for depravation of civil rights under 42 U.S.C. § 1983.

## II.     Motion to Intervene

FHAA has moved to intervene and has filed a proposed intervenor complaint. FHAA is a non-profit corporation organized under the laws of Ohio. Its objectives include combating unlawful housing discrimination and providing equal housing opportunities through "education, monitoring, conciliation and by enforcing" fair housing laws. Doc. 18-1, ¶ 3.

T&R initiated contact with FHAA "to consult with and request an investigation of any discriminatory conduct by Defendants." Doc. 31, ¶ 19. FHAA "conducted an investigation" of Berlin Township's "reasons for rejecting the development, and found probable cause that discriminatory bias is at the root of Defendant's decision making." Doc. 18 at PAGEID 2404.

FHAA alleges that it has been injured by Berlin Township's denial of T&R's request for zoning approval because FHAA engaged in an investigation on behalf of T&R, thereby diverting the organization's resources. FHAA expended time, money, and resources in gathering information, doing research, and helping assist T&R in enforcing the fair housing laws.

FHAA further alleges that it has been injured because Berlin Township's discriminatory housing practices frustrates FHAA's mission or purpose. Its purpose is to eliminate unlawful discriminatory housing practices, and the Township has allegedly frustrated that purpose by rejecting T&R's proposed housing plans and excluding low-income individuals and racial minorities from living in the Township.

The proposed intervenor complaint alleges that the Township's rejection of T&R's development plans violates the Fair Housing Act. The complaint asserts claims for intentional discrimination and disparate impact discrimination.

FHAA's prayer for relief includes requests for the Court to do the following: require Berlin Township to undergo "a program of affirmative fair housing activities to correct the effects" of past discriminatory practices; authorize FHAA to conduct quarterly monitoring of the Township's "activities" for at least 3 years; and award $300,000 in compensatory damages and $300,000 in punitive damages to FHAA. Doc. 18-1, ¶ 46.

Berlin Township opposes the motion to intervene. T&R has not responded to or opposed the motion.

### III. Discussion

#### A. Intervention as of Right

Rule 24(a) of the Federal Rules of Civil Procedure provides for intervention as of right. Upon a timely motion, the court must permit anyone to intervene who "is given an unconditional right to intervene by a federal statute" or who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

Berlin Township argues that the motion to intervene must be denied because FHAA does not have standing to assert a claim. The Township contends that FHAA's voluntary expenditure of resources to counsel T&R or to advocate against the Township's actions is not the type of injury which establishes standing. FHAA responds by arguing that it does have standing to assert a claim.

The Court must clarify that "a party seeking to intervene need not possess the standing necessary to initiate a lawsuit." *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991); *accord Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) ("[A]n intervenor need not have the same standing necessary to initiate a lawsuit."). Even so, courts have sometimes considered standing concerns in evaluating whether a proposed intervenor has a sufficient legal interest in the suit to intervene as of right. *See, e.g.*, *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 419 (E.D. Ky. 2015) ("The Court recognizes, as do all the parties, that in the Sixth Circuit an 'intervenor need not have the same standing necessary to initiate a lawsuit.'" *Grutter*, 188 F.3d at 398; *Purnell v. Akron*, 925 F.2d 941, 948 (6th Cir. 1991). However, if any taxpayer's generalized concern about the use of their tax

dollars is insufficient to bring a suit but is considered substantial and direct enough to intervene in other suits, what is to prevent all Kentucky taxpayers from intervening in a suit such as this one?"); *Deutsche Bank Nat'l Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 194 (D.C. Cir. 2013) ("Even if appellants enjoyed Article III standing—which they do not—they would still run afoul of prudential standing requirements, which could be thought similar to the concept embodied in Rule 24 that a proposed intervenor must have an interest "relating to" the property or transaction at issue in the litigation.").

### 1. Statutory Right to Intervene

FHAA has put standing concerns into the fore. It argues that that it has a statutory right to intervene, pursuant to Rule 24(a)(1), because it is an "aggrieved person" under the Fair Housing Act. FHAA asserts that it has standing to bring its own claims against the Township under the Act, which authorizes suits by an "aggrieved person" who has been "injured by a discriminatory housing practice" or who believes that they "will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. §§ 3602(i), 3613(a)(1)(A); *see* Doc. 18-1, ¶ 3. FHAA also cites § 3612(o)(2) for the proposition that aggrieved persons are given a right to intervene in any action under the Act.

FHAA's argument is misplaced. For starters, the Fair Housing Act gives an aggrieved person the right to intervene only when the United States is the party bringing a charge of housing discrimination. *See* 42 U.S.C. §§ 3612(o)(2), 3614(e); *see also United States v. Henry*, 519 F. Supp. 2d 618, 620–21 (E.D. Va. 2007). Here, a private citizen initiated the suit and FHAA lacks a statutory right to intervene.

Moreover, FHAA has not demonstrated that it is an aggrieved person with standing to assert its own claims. As the Township points out, the United States Supreme Court's holding in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), guides the analysis of the issue of standing for an organization which opposes a governmental entity's actions. To possess standing, an organization must have a "personal stake in the dispute." *Id.* at 379 (stating that courts do not have jurisdiction to opine on legal issues raised by entities roaming about "in search of governmental wrongdoing") (internal quotation marks omitted). The first and second requirements of standing – injury in fact and traceability (or causation) – are "the two key questions in most standing disputes." *Id.* at 381.

4

An injury in fact must be "concrete" and not "abstract." *Id.*. "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Id.* at 381. An organization does not have standing to sue "simply because the plaintiff believes that the government is acting illegally." *Id.* In other words, an organization may not bring suit based solely on a desire to bring a governmental entity into perceived compliance with the law. *Id.*; *see also id.* at 382 ("The injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders.") (internal quotation marks omitted).

The traceability requirement puts the burden on the organization to show that its "injury likely was caused or likely will be caused by the defendant's conduct." *Id.* at 382. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *Id.* But where an organization challenges the government's "unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* (internal quotation marks omitted) (emphasis in original). The organization must show that the government's action caused a likely and predictable response from the regulated party which in turn injured the organization. *Id.* at 383. It must demonstrate "a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact" to the organization. *Id.* at 385.

Applying these standards, the Court finds that FHAA lacks standing to qualify as an aggrieved person who may assert the proposed intervenor claims. The Township is not alleged to have taken any action against FHAA directly. *See* Doc. 18 at PAGEID 2407 (FHAA stating in its motion that "FHAA is asserting in its complaint that the Defendant's actions against T&R impacts its interest"); Doc. 18-1, ¶ 3 (proposed intervenor complaint alleging that FHAA "has been injured through the [Township's] acts of denying [T&R's] zoning request"). Rather, FHAA wishes to intervene because of its ideological opposition to the Township's alleged discriminatory practices. FHAA alleges that its mission to eliminate unfair housing practices was frustrated by the Township's rejection of T&R's zoning applications. However, "an organization may not establish standing

simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct." *Id.* at 394 (internal quotation marks omitted). A "setback" to an organization's policy interests does not establish standing. *Id.*

FHAA further alleges that it has suffered injury because the Township's denial of T&R's zoning applications caused FHAA to divert resources by investigating the Township's practices at T&R's request. This too fails to establish standing, and again the holding in *Alliance* controls. In *Alliance*, medical associations challenged the FDA's approval of the drug mifepristone for use to terminate pregnancies. Besides expressing moral opposition, the medical associations claimed to have standing "based on their incurring costs to oppose FDA's actions." *Id.* The costs included conducting studies "so that the associations [could] better inform their members and the public about mifepristone's risks," and expending "considerable time, energy, and resources drafting citizen petitions to FDA, as well as engaging in public advocacy and public education." *Id.* Incurring those costs forced the medical associations to divert resources away from "other spending priorities." *Id.* The Supreme Court rejected their theory of standing: "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *Id.*

Here, FHAA alleges that the Township's denial of T&R's request for zoning approval caused injury to FHAA because it expended resources to assist T&R and conduct an investigation. Even as alleged in the intervenor complaint, the actual, concrete injury was to T&R (rejection of its zoning applications). There are no allegations to support an inference that the injury to T&R would likely in turn force FHAA to expend resources. To the contrary, FHAA chose to help when T&R voluntarily approached FHAA for guidance. At the point in time it was approached by T&R, FHAA had no injury caused by the Township. FHAA cannot manufacture standing merely by choosing to help T&R by conducting an investigation and advocating against the Township's alleged practices. *Id.*; *see also Tenn. Conf. of NAACP v. Lee*, __ F.4th __, 2025 WL 1587965, at *5 (6th Cir. June 5, 2025) (describing in *Alliance* that "the associations' *voluntary decision* to spend time and money opposing the FDA's actions broke any causal link between their expenditures and the challenged

6

actions. . . . In other words, the Court found that the associations had suffered a nonactionable 'self-inflicted' injury—not an actionable FDA-inflicted one.") (emphasis in original).

FHAA argues that the Township's actions have affected the organization's core business activities. FHAA cites a discussion within the *Alliance* decision in which the Supreme Court distinguished one of its prior decisions. *See Alliance*, 602 U.S. at 395 (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). The Supreme Court observed that in *Havens* the issue was "whether a housing counseling organization, HOME, had standing to bring a claim under the Fair Housing Act against Havens Realty, which owned and operated apartment complexes." *Id.* The Court in *Havens* found that HOME had standing to sue because Haven's actions of providing false information to HOME's employees "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers" and thereby "directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* (internal quotation marks omitted).

In attempting to liken itself to HOME in the *Havens* case, FHAA argues that it provides counseling services to "developers and home seekers of equal housing opportunities." Doc. 27 at PAGEID 2460. FHAA provided counseling to T&R. FHAA contends that the Township's rejection of T&R's development plans impacted FHAA's "core activity of preventing overt, widespread discrimination." Doc. 27 at PAGEID 2460.

The Court must reject FHAA's argument for two interrelated reasons. First, in arguing that preventing discrimination is its "core activity," FHAA ignores the Supreme Court's statement that the injury must be to the organization's "core *business* activities." *Alliance*, 602 U.S. at 395 (emphasis added). Second, in arguing that it has been impacted by the Township's denial of the zoning applications, FHAA ignores the more rigorous requirement of showing that the defendant's actions "directly affected" and "interfered with" the organization's business activities. *Id.* In *Havens*, HOME satisfied those standards because it showed that Havens had directly provided false information to HOME's employees about apartment availability, which interfered with HOME's ability to counsel its clients about housing options. *Id.*

7

FHAA has fallen well short of the showing required for it to assert a claim against the Township as an alleged aggrieved party. The Township is not alleged to have had any direct dealings with FHAA or to have interfered with FHAA's ability to counsel its clients or interfered with its investigation. Indeed, FHAA alleges that it was able to conduct an investigation and counsel T&R. FHAA's policy opposition to housing discrimination and the alleged indirect impact upon its resources are insufficient to establish standing. *See Fair Housing Ctr. of Metro. Detroit v. Singh Senior Living*, 124 F.4th 990, 992–93 (6th Cir. 2025) ("It is not enough to broadly gesture toward 'a drain on an organization's resources' and call it a day . . . . There must be something more—the court must find that the organization has alleged and shown that the conduct challenged in the suit interfered with the organization's 'core business activities.'") (quoting *Alliance*, 602 U.S. at 395).

### 2. Substantial Legal Interest

A right to intervene also exits when a person "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To intervene as of right in this regard, a movant must establish that (1) the motion to intervene was timely; (2) "they have a substantial legal interest in the subject matter of the case"; (3) "their ability to protect that interest may be impaired in the absence of intervention"; and (4) "the parties already before the court may not adequately represent their interest." *Grutter*, 188 F.3d at 397–98

As noted above, the requirement that the proposed intervenor have a substantial legal interest is similar to the concern of prudential standing that a party is pursuing its own legal rights and not another's. *See Deutsche Bank*, 717 F.3d at 194; *see also Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (discussing prudential standing). But it must be noted that the "inquiry into the substantiality of the claimed interest is necessarily fact-specific" and Rule 24(a)(2) does not require a "specific legal or equitable interest." *Grutter*, 188 F.3d at 398 (internal quotation marks omitted).

FHAA's alleged legal interest is in the diversion of its resources and the hindrance of its organizational mission. The Court again finds that these alleged harms are not of the nature to give FHAA a right to intervene. The Township's actions have not regulated FHAA in any way, and

FHAA's expenditure of resources was done at the exercise of its own discretion. *See Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (holding that an organization lacked a substantial legal interest sufficient to intervene as of right because "STTOP has only an ideological interest in the litigation, and the lawsuit does not involve the regulation of STTOP's conduct in any respect").

Additionally, plaintiff T&R will adequately represent FHAA's interests in opposing the Township's alleged discriminatory housing practices. The Court acknowledges that a proposed intervenor's burden in showing inadequacy is "minimal." *Grutter*, 188 F.3d at 400. The proposed intervenor needs to "show only that there is a potential for inadequate representation" and not that the representation will in fact be inadequate. *Id.* at 400–01.

Even so, FHAA wishes to assert the same legal claims which T&R already has, based on the same alleged actionable conduct by the Township in denying the zoning applications. Namely, the proposed intervenor complaint asserts two claims under the Fair Housing Act. The first is for intentional discrimination against minorities in denying T&R's zoning applications. It alleges that "Defendants acted with discriminatory intent in violation of the Fair Housing Act in creating barriers toward the development of affordable housing and housing opportunities for minorities and African Americans as it related to denial of zoning for the T&R Properties and development." Doc. 18-1, ¶ 30. This claim repeats verbatim T&R's claim for intentional discrimination under the Fair Housing Act. *See* Doc. 31, ¶ 135 ("Defendants acted with discriminatory intent in violation of the Fair Housing Act in creating barriers toward the development of affordable housing and housing opportunities for minorities and African Americans as it related to denial of zoning for the T&R Properties and development.").

The second claim of the proposed intervenor complaint is for disparate impact discrimination under the Act, again based on the Township's denial of T&R's applications. It asserts that "[T]he denial of T&R's development plans and proposals and requested rezoning had a disparate discriminatory impact on African Americans and other minorities living in the Greater Columbus Ohio and Berlin Township areas." Doc. 18-1, ¶ 40. Here too, FHAA has repeated verbatim T&R's claim for disparate impact discrimination under the Act. *See* Doc. 31, ¶ 145 ("[T]he

denial of T&R's development plans and proposals and requested rezoning had a disparate discriminatory impact on African Americans and other minorities living in the Greater Columbus Ohio and Berlin Township areas.").

In other words, FHAA's claims are duplicative of T&R's. FHAA would be trying to prove the same thing as T&R – that the Township's actions were discriminatory in intent and impact. In light of the absence of an injury in fact to FHAA (i.e., its own harm independent from that suffered by T&R), the Court finds that T&R will adequately represent FHAA's interest in opposing the Township's denial of T&R's zoning applications.

### 3. Summary

In sum, the Court finds that FHAA is not entitled to intervene as of right under Rule 24(a) based on either a statutory right or a substantial legal interest.

### B. Permissive Intervention

Rule 24(b) provides for permissive intervention by which a court may permit anyone to intervene who "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). A court must also "balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

FHAA would assert claims that share common questions of law and fact with T&R's claims. Nonetheless, the Court finds that permissive intervention is not appropriate. FHAA's lack of a legal interest in this dispute counsels against permitting it to intervene. *See EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1510 (9th Cir. 1990) (denying permissive intervention where the intervenor had "no substantive rights" at stake); *Nemes v. Bensinger*, 336 F.R.D. 132, 139 (W.D. Ky. 2020) (considering uncertainty of proposed intervenor's standing in denying permissive intervention); *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, No. 2:14-CV-2207, 2016 WL 3384298, at *4 n.2 (S.D. Ohio June 20, 2016); *United States v. Michigan Dep't of Cmty. Health*, No. 1:10-MC-109, 2011 WL 2412602, at *9 (W.D. Mich. June 9, 2011) (considering the proposed intervenor's lack of standing in denying permissive intervention).

Moreover, the Court finds that permitting FHAA to intervene would prejudice the parties and not advance the litigation. Though FHAA's causes of action track those of T&R, the clear undertone of FHAA's briefing is that it has a larger agenda to pursue. FHAA claims it found "probable cause" to believe the Township has a discriminatory bias against minorities. Doc. 18, p. 2. FHAA wishes to rid the Township of perceived discriminatory practices. *Cf. Michigan Dep't of Cmty. Health*, 2011 WL 2412602, at *9 (W.D. Mich. June 9, 2011) (holding that "MACC's generalized interest in advocating with respect to the regulation of medical marijuana is insufficient" for permissive intervention). And FHAA's proposed intervenor complaint seeks relief far beyond what T&R seeks. While T&R's complaint is focused on the denial of its zoning applications and its prayer for relief is tailored accordingly, FHAA's prayer for relief reveals that it seeks to subject the Township to "a program of affirmative fair housing activities" to correct the effects of past discriminatory practices and that it seeks to "monitor" the Township for three years. Doc. 18-1, ¶ 46. FHAA's presence in this suit would likely expand the scope of the litigation in a manner that would not serve the expeditious resolution of T&R's claims against the Township.

**IV.    Conclusion**

Accordingly, FHAA's motion to intervene (doc. 18) is DENIED.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: June 16, 2025

11