IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

T&R Properties, Inc., et al.,

                    Plaintiffs,

     v.

Berlin Township, et al.,

                    Defendants.

Case No. 2:24-cv-3761

Judge Graham

Magistrate Judge Jolson

Opinion and Order

Plaintiffs T&R Properties, Inc. and its related business entities, Berlin Industrial, LLC and Berlin Apartments, LLC, bring this action concerning a zoning dispute against defendants Berlin Township and the Township's Board of Trustees, Zoning Commission, and Board of Zoning Appeals. Defendants rejected T&R's applications to develop a residential apartment project and an industrial warehouse project. T&R asserts claims for race-based disparate treatment and disparate impact under the Fair Housing Act, 42 U.S.C. § 3604. It also asserts claims under 42 U.S.C. § 1983 for violations of its constitutional rights to substantive due process and equal protection.

This matter is before the Court on the Township defendants' motion to dismiss. For the reasons set forth below, the motion to dismiss is denied in part and granted in part, and consideration of the FHA claims is deferred.

I.     **Background**

T&R Properties is a real-estate developer in Ohio. Berlin Township is located in Delaware County, Ohio.

According to the Second Amended Complaint,[1] the Township adopted a Comprehensive Land Use Plan in 2020 in response to significant population growth. *See* Compl., ¶¶ 1–3, 63. The Plan designated an area along State Route 36/37 as the Berlin Business Park. *See id.*, ¶¶ 5, 85; Doc. 1-3 at PAGEID 62 (December 2020 map showing zoning restrictions within the Business Park).[2]

---

[1] The Second Amended Complaint (hereinafter the "Complaint") is labeled as a verified complaint; however, plaintiffs did not attach a verification to the pleading.

[2] The documents to which the Court cites are attached as exhibits to the Complaint.

1

Within the Business Park were districts designated as the Berlin Industrial Overlay ("BIO") and Berlin Commercial Overlay ("BCO").  *See id.*, ¶¶ 1, 5, 69.  The BIO and BCO designations and their accompanying zoning regulations were incorporated into the Berlin Township Zoning Resolution  *See id.*, ¶¶ 1, 67, 70, 73, 83, 92; Doc. 1-3 at PAGEID 64–80; Doc. 1-4 at PAGEID 173, Doc. 1-6 at PAGEID 358.  *See also* Ohio Rev. Code § 519.021 (allowing townships to establish planned-unit developments).  The purpose of the Land Use Plan and the designations was to attract development and provide a "flexible approach to zoning in order to meet the living and working needs of central Ohio's growing population."  Compl., ¶ 3.

T&R purchased parcels of land that are located in the BIO district.  *See id.*, ¶ 5.  The parcels, which are contiguous, were originally zoned as farm residential.  *See id.*, ¶ 92.  Zoning regulations within the BIO district allow for various uses, including commercial, industrial, and residential.  *See* Doc. 1-3 at PAGEID 64–80; Doc. 1-6 at PAGEID 358.  Based on preliminary meetings it had with Township officials in 2022, T&R formed plans to develop an apartment project on about 50 acres of the land it had purchased and to develop an industrial building project on the remaining 31 acres.  *See* Compl., ¶ 7; Doc. 1-6 at PAGEID 387, 390–391, 404; Doc. 1-9 at PAGEID 649.

### A.    The Residential Project

After its preliminary discussions with Township officials, T&R informally proposed a residential project which would consist of 460 apartment units, at a density of about 11 units per acre. *See* Doc. 1-6 at PAGEID 390.  The proposal raised concerns from Township officials and community members about the level of density.  T&R responded to those concerns by first reducing the number to 368 units and then ultimately lowering it to 296 units.  *See id.* at PAGEID 402, 404; Doc. 1-11 at PAGEID 825.  T&R believed the reduced number of proposed units was as low as it could go while ensuring that the project would remain economically feasible.  *See* Doc. 1-6 at PAGEID 404; Doc. 1-11 at PAGEID 825–826.  T&R also believed, in light of its discussions with Township officials, that zoning regulations applicable to the BIO district would be applied flexibly to encourage development of the district.

In March 2023, T&R submitted a formal development plan to the Berlin Zoning Commission for a Planned Residential District, or "PRD."  *See* Doc. 1-6 at PAGEID 397.  T&R proposed a 296-unit apartment project.  *See id.* at PAGEID 404.  Included with the development plan was an application for rezoning the land from farm residential to multi-family for-rent under Berlin Township Zoning Resolution, Article 11, which governs PRDs.  *See id.* at PAGEID 401–403.  The application also sought a variance to have a density of 6.97 units per acre.  *See id.* at PAGEID 404.  According to

the Complaint, this was a deviation from the limit of 4 units per acre for the area of the BIO district in which T&R's land was located.[3]  *See* Compl., ¶¶ 9, 37, 78, 82; *see also* Doc. 1-6 at PAGEID 362, 385, 387 (maps showing that the proposed residential project was on land in the BIO district which was zoned as R-4, meaning a maximum number of 4 units per acre); Doc. 1-7 at PAGEID 410–411 (Berlin Township Zoning Resolution, Article 11.04, allowing density of up to R-4 in PRDs).

T&R's proposal was heard by the Zoning Commission at a March 21, 2023 meeting.  The Commission voted against recommending T&R's application for approval.  *See* Compl., ¶ 106.  The Complaint does not indicate whether the Commission stated a basis for voting against the application.

T&R advanced its application to the Board of Trustees.  An initial hearing was held on April 24, 2023.  *See id*, ¶ 107.  The Trustees held a second hearing on June 12, 2023 and voted to deny the application.  *See id.*  According to the Complaint, racially "coded" statements were made at the hearings by one or more of the Trustees and by members of the public who spoke in opposition to the project.  *See id.*, ¶¶ 33–34.  One such statement was that the project would "create a ghetto."  *Id.*, ¶ 35.  The Complaint alleges that the decisions of the Township officials were motivated by animus against racial minorities, whom officials feared would be drawn to the community by high-density housing.  The Complaint also alleges that vague concerns about safety were raised, which were a pretext for an underlying desire to keep "families with children" out of the community.  *Id.*, ¶¶ 33–34.

T&R asked the Board of Trustees to reconsider its denial of T&R's application.  On September 11, 2023, the Trustees denied T&R's request.  *See* Doc. 1-11 at PAGEID 869.  They denied T&R's request on the stated basis of enforcing the R-4 density limit, but this was allegedly pretext for discriminatory animus.  *See* Compl., ¶ 37.  The Complaint alleges that at the same meeting, the Trustees approved a different developer's proposal to build an apartment project in the Business Park at a density of 10 units per acre.  *See id.*, ¶ 38.

On February 6 and 20, 2024, T&R appeared before the Berlin Township Board of Zoning Appeals (BZA).  T&R presented two related variance applications.  *See* Ohio Rev. Code § 519.14(B) (providing that a BZA may authorize, on appeal, a variance from the terms of a zoning resolution when it would "not be contrary to the public interest" and "where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship").  One was for a use variance

---

[3]  Other areas of the Business Park and BIO district were designated as R-10, allowing for residential use at a density of up to 10 units per acre.  *See* Doc. 1-3 at PAGEID 62; Doc. 1-4 at PAGEID 173, 183; Doc. 1-6 at PAGEID 362.

3

to permit a multifamily, for-rent development with a density of 6.97 units per acre.  The second was for an area variance to the same effect.  *See* Doc. 1-12 at PAGEID 980.

At its February 20, 2024 meeting, the BZA unanimously denied both variance applications.  It denied the use variance on the stated grounds that T&R did not show that other uses of its land – including farming, for which it was original zoned – would not be economically feasible and thus an undue hardship.  *See id.* at PAGEID 982 (". . . Applicant has not shown undue hardship because the land has continual use, or the land could be used to follow current zoning under the BIO of R-4.").  The BZA denied the area variance because the proposal was "a significant, substantial increase in the density based on status quo and the overlay" and would impact "the character of the neighborhood significantly."  *Id.*  The Complaint alleges that the BZA denied the variances out of desire to restrain housing density and thereby "make the Township unaffordable to minorities and lower income people."  Compl., ¶ 117.

### B.    The Industrial Project

In early 2023, T&R created a plan to build four buildings of 120,000 square feet each on about 31 acres of land.  *See* Doc. 1-9 at PAGEID 647, 649, 656.  The application that accompanied the plan requested for the land to be rezoned from farm residential to industrial.  *See id.* at PAGEID 649.

According to the Complaint, T&R's intent was for the buildings to be used as warehouses – an intended use which T&R believed it had made known to Township officials prior to the application process.  *See* Compl., ¶¶ 7, 8.  However, T&R's application listed "Industrial" as the proposed use and did not indicate warehousing.  Doc. 1-9 at PAGEID 649.

Article 19 of the Township Zoning Resolution provides a table of permitted uses in the BIO district.  *See* Doc. 1-3 at PAGEID 64–80.  The table adopts the North American Industry Classification System (NAICS), which uses numerical codes to categorize various economic activity and business types.  *See id.*; Compl., ¶ 9.  "Industrial" is a permitted use in the BIO under Article 19.  *See* Doc. 1-3 at PAGEID 65 (NAICS Code 236210).  T&R's desired use of "Warehousing and Storage" (NAICS Code 493) is not a permitted use in the BIO.  *See* Compl., ¶ 9; Doc. 1-3 at PAGEID 64–80.

T&R's plan first went before the Township Architectural Review Board in February 2023.  The meeting agenda stated that T&R was seeking to rezone the land to "Industrial Warehousing," and NAICS Code 236210 was listed.  *See* Doc. 1-10 at PAGEID 784–785.  The Architectural Review Board voted not to recommend the plan to the Zoning Commission for reasons unrelated to the proposed use or the NAICS codes.  *See* Doc. 1-10 at PAGEID 788–793 (detailing the areas in which

the plan did not satisfy various design and layout standards, such as those relating to lot setbacks, building color, signage, and buffer zones).

After revising the plan to address the Architectural Review Board's concerns, T&R went before the Zoning Commission. The proposed use code of NAICS 236210 was listed on the agenda of the Commission's February 28, 2023 meeting. *See id.* at PAGEID 796. The Commission members asked questions of T&R about various design and layout aspects of its plan, like screens for rooftop mechanical units, signage, landscaping, sidewalks, setbacks, and parking and loading dock spaces. *See id.* at PAGEID 796–804. In a split decision, the Commission voted not to recommend the plan for approval to the Board of Trustees. *See id.* at PAGEID 804.

T&R then submitted its plan to the Board of Trustees. The Trustees first heard the plan at an April 10, 2023 meeting. *See* Compl., ¶ 102. The Trustees determined that more information was needed and continued matter to give T&R time to provide additional information, including any codes or conditions which T&R wanted to be considered as permitted uses. *See id.*

The Trustees met again on April 24, 2023 to consider T&R's plan. T&R presented a listing of various NAICS codes for which it was seeking approval, but Code 493 was not one of them. *See* Doc. 1-11 at PAGEID 813–814. On an issue which seemed to cause confusion, T&R said that permission for Code 493 had already been requested in the original application. *See id.* at PAGEID 811. The Trustees looked at the application and said that only Code 236210 appeared, not Code 493. *See id.* T&R pushed back, stating that "without the NAICS code 493/Warehousing and Storage," the project "would never happen." *Id.* at PAGEID 812.

The Trustees voted to conditionally approve the application as it had been submitted, insofar as it concerned design and layout standards, as well as the requested uses which matched NAICS codes permitted in the BIO. *See id.* at PAGEID 811–814. However, the Trustees did not vote to approve or add NAICS Code 493 to the BIO, as requested by T&R. *See id.* at PAGEID 812. The Trustees explained that Code 493 "is not an accepted code in the BIO," "they cannot just add a NAICS code," their review was "administrative" in nature, and T&R would have to pursue a "different process" if they wanted the BIO rezoned to permit Code 493. *Id.*

T&R took the matter to the BZA, which considered the industrial project plan at the same time it considered T&R's applications for variances with respect to the residential project. T&R applied for a use variance and an area variance to permit using the industrial parcel according to NAICS Code 493. *See* Doc. 1-12 at PAGEID 975. On February 20, 2024, the BZA voted unanimously to deny the variances. *See id.* at PAGEID 979–980. The BZA's stated reasons for denial

5

were that: Code 493 is not a permitted code; T&R knew it was not a permitted code when it purchased the land; and there were other permitted uses of the land which were economically feasible and would not impose an undue hardship on T&R.  *See id.* at PAGEID 976–978.

### C.      The State Court Proceedings

During the pendency of this case, T&R pursued an administrative appeal in state court.  The Court of Common Pleas of Delaware County affirmed the decisions of the BZA.  *See* Doc. 70-1. Reviewing the BZA decisions under an arbitrary and capricious standard, *see* O.R.C. § 2506.04, the court concluded that T&R did not show undue hardship with respect to the denial of its proposed uses of the residential and industrial parcels.  The court found that the residential parcel was not zoned for a density beyond 4 units per acre and the industrial parcel was not zoned for Code 493 as a permitted use.  The court further determined that T&R was aware of the applicable zoning restrictions when it purchased the land and knew "the inherent risk of purchasing land that did not permit their desired use."  Doc. 70-1 at PAGEID 2934.  To the extent T&R had argued that Township officials made pre-application representations about the likely success of T&R's proposed applications, the court noted that the Township's Zoning Resolution cautioned that statements made by Township officials prior to formal submission of development plans were not binding.  *Id.* (citing Article 11.02). Finally, the court found that there were alternative, economically feasible and permissible uses of the parcels.  *See id.* at PAGEID 2934–2936.

On appeal, the state court of appeals found no error and affirmed the trial court's decision. *See* Doc. 70-2.

### D.      T&R's Complaint

T&R alleges that it was unwittingly enticed by Berlin Township's "purported willing and flexible approach" to developing the land in the BIO district.  Compl., ¶ 4.  According to the Complaint, in reality the Township would only allow development "so long as the proposed development invited Berlin Township's desired residents, businesses, and employees.  Berlin Township had no official interest in allowing financially viable development that might lead to affordable housing, diversity, inclusive businesses and employment beyond Berlin's nearly all-white status quo population . . ." *Id.*, ¶ 5.

The Complaint alleges that the Township's refusal to approve T&R's plan to build apartments was motivated by animus against racial minorities and families with children.  *See id.*, ¶ 33.  Township officials allegedly believed the availability of high density housing would cause racial minorities and families to move into the community.  Again, the Complaint alleges that statements were made during

the meetings of the various Township boards which expressed bias against racial minorities and families.  The comments included remarks which were allegedly racially-tinged, including statements that the residential project would change the area into a "ghetto" and would "significantly" change the "character of the neighborhood." *Id.*, ¶¶ 35, 42, 55.  The comments were made either by Township officials or members of the public.  In the latter instance, Township officials who heard the biased statements allegedly agreed and incorporated them into their decisions to reject the residential project. *See id.*, ¶ 35.

The Complaint further alleges that the Township's discriminatory housing practices have created "extreme racial disparity."  The Township's long-standing limits on high-density housing is the primary alleged reason for the disparity.  The Complaint points to various sources of demographic data in maintaining that the Township has a 73% smaller Black population than compared to the State of Ohio.  *See id.*, ¶ 52.

The Complaint asserts four substantive causes of action.  The first two are brought under the Fair Housing Act (FHA), 42 U.S.C. § 3604.  In Count One, T&R alleges that the Township engaged in intentional discrimination against racial minorities and families with children by prohibiting T&R from developing its land in a manner which would provide affordable housing for those segments of the population.  In Count Two, T&R asserts that the Township's zoning regulations have had a disparate impact on racial minorities.

Count Three brings a substantive due process claim under the Fourteenth Amendment to the United States Constitution.  T&R alleges that the Township acted in an arbitrary and capricious manner in depriving T&R of its interest in putting its land to the desired uses.

Count Four asserts a claim under the Equal Protection Clause of the Fourteenth Amendment. T&R alleges that the Township treated it differently from another developer of a comparable property in the Business Park.  T&R contends that the Board of Trustees gave approval to the other developer to build apartments at a unit density which was greater than what T&R sought.

The remaining counts (Counts Five to Eight) are not substantive, but seek various forms of relief, including monetary damages under 42 U.S.C. § 1983 for the deprivations of constitutional rights alleged in Counts Three and Four, a permanent injunction restraining the Township from denying T&R's development applications, and a declaratory judgment that the Township's zoning code is unenforceable as to T&R.

## II.        Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

8

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    Threshold Issues

#### A.    Issue Preclusion

Berlin Township's motion to dismiss argues that consideration of T&R's substantive due process claim is barred by the doctrine of issue preclusion. The Township contends that the issue of whether its denial of T&R's development applications was arbitrary or capricious has already been litigated and decided in the Delaware County Court of Common Pleas.

Under the doctrine of collateral estoppel, or issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). Issue preclusion applies when: "(1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue." *Santana–Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005).

The Court need not look beyond the first requirement to find that collateral estoppel does not apply. T&R's substantive due process claim presents a different issue from the one before the state court. The state court's review of the administrative decisions of the BZA concerned whether those decisions were "arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." O.R.C. § 2506.04. In conducting its review, the state court looked to whether the BZA "misapplied the law governing use and area variances" to the facts at hand. *See* Doc. 70-1 at PAGEID 2930. In particular, the state court evaluated whether there was evidence to support the BZA's findings that enforcement of the existing zoning codes would not create an unnecessary hardship and that, absent the grant of a use variance, T&R could still put the land to an economically feasible use. *See id.* at PAGEID 2932–2936; *see also id.* at PAGEID 2936–2939 (examining if T&R had proved that the land could not yield a reasonable return or be put to some beneficial use absent the grant of an area variance). The state court concluded that the BZA "did not err" or act in "arbitrary, capricious, or unreasonable" fashion by denying the variances. *Id.* at PAGEID 2936, 2939.

The law of substantive due process, of course, employs the same terminology of "arbitrary" and "capricious." To prevail on a substantive due process claim, a plaintiff must establish the existence of a constitutionally protected property or liberty interest, and show that the protected interest has been deprived through "arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).

But the meaning and application of the terms "arbitrary" and "capricious" in the "federal substantive due process context means something far different than in state administrative law." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992) (footnote omitted). Substantive due process review looks for "extreme irrationality," as the Sixth Circuit has explained:

> Where a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of "arbitrary and capricious action" in the *strict* sense, meaning that there is no rational basis for the administrative decision.
>
> The use of the term "arbitrary and capricious" in this context causes considerable confusion, because these same terms are also used to describe the scope of review by state courts of state administrative action. Therefore, it must be emphasized that the state court scope of review of a decision of a state administrative agency is far broader than the federal scope of review under substantive due process.
>
> In some states, a state court may set aside state administrative action as being "arbitrary and capricious" on the ground, among others, that it is not supported by substantial evidence. No such ground may be used by the federal court in reviewing state administrative action in connection with a federal substantive due process attack, however. In the federal court the standard is a much narrower one. The administrative action will withstand substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.
>
> The federal court may make only the most limited review of the *evidence* before the state administrative agency. This review is limited to determining whether the agency has paid attention to the evidence adduced and acted rationally upon it. The state decision may not be set aside as arbitrary and capricious if there is "some factual basis" for the administrative action. . . .
>
> . . .
>
> Although the "shocks the conscience" terminology, as another panel later observed, is more apt for cases involving physical force, it is useful in the zoning context too, to emphasize the degree of arbitrariness required to set aside a zoning decision by a local authority—and to underscore the overriding precept that "arbitrary and capricious" in

the federal substantive due process context means something far different than in state administrative law.

By its "shocks the conscience" terminology the [other panel] court was referring to extreme irrationality . . . .

*Id.* at 1221–22 (emphasis in original) (internal quotation marks, alterations, and footnotes omitted). *See also Andreano v. City of Westlake*, 136 Fed. App'x 865, 872 (6th Cir. 2005) ("Merely because the state courts found that the City's rejection of the Plan was arbitrary and capricious under state law does not necessitate the same conclusion under federal [substantive due process] law."); *Tri-Cnty. Concrete Co. v. City of N. Royalton*, 181 F.3d 104, 1999 WL 357789, *2 (6th Cir. May 14, 1999) ("The federal scope of review under substantive due process is much different than a state court's scope of review of a state administrative agency's decision. . . . [A] much higher threshold, 'extreme irrationality,' must be demonstrated to make out a federal substantive due process claim.").

Because the state court's review of the BZA decisions employed a different standard than the one this Court uses for substantive due process claims, the doctrine of issue preclusion does not apply.

**B.** *Rooker-Feldman*

The Township next argues that the substantive due process claim is barred by the *Rooker-Feldman* doctrine. The doctrine stands for the "straightforward proposition that a lower federal court may not entertain a direct appeal 'to reverse or modify' the 'judgment' of a state court." *HPIL Holding, Inc. v. Zhang*, 168 F.4th 944, 947 (6th Cir. 2026) (citing *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 416 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 463 (1983)). The doctrine will "eliminate jurisdiction only over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 949 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The Court finds that *Rooker-Feldman* does not apply here. T&R is not seeking review and reversal of the state court's administrative review of the BZA's decisions. Rather, the injuries complained of by T&R are as follows: the Township's discriminatory rejection of the residential project, in violation of the FHA; the disparate impact which the Township's zoning policies have had on racial minorities, in violation of the FHA; and the Township's unfair treatment of T&R in rejecting the residential and industrial projects, in violation of its rights to substantive due process and equal protection.

Because the Complaint does not seek review of the state court's decision, the *Rooker-Feldman* doctrine does not apply.

## IV.     Section 1983 Claims

### A.        Substantive Due Process

The Fourteenth Amendment "protects individuals from government deprivation of certain liberty and property interests without due process of law." *Oliver v. Etna Twp., Ohio*, 731 F.Supp.3d 901, 920 (S.D. Ohio 2024).   "[S]ubstantive due-process claims raised in the context of zoning regulations require a plaintiff to show that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (internal quotation marks omitted).

An "entitlement test" is applied to determine whether plaintiff has a protected Fourteenth Amendment right to use its property in the manner sought. *Andreano v. City of Westlake*, 136 Fed. App'x 865, 871 (6th Cir. 2005); *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). When state or local government officials have discretion to either grant or deny a proposed use of property, a protected interest does not exist. *See Rubicon Real Est. Holdings, LLC v. City of Pontiac, Michigan*, 179 F.4th 431, 444 (6th Cir. 2026).   "[A] protectible property right exists only if a plaintiff has a legitimate claim of entitlement or a justifiable expectation in the approval of his Plan." *Andreano*, 136 Fed. App'x at 871 (internal quotation marks omitted).  In order to satisfy the entitlement test with respect to a "future, rezoned land use," a plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (internal quotation marks and alteration omitted).  Courts look to state law in examining the claim to entitlement.  *See Rubicon,* 179 F.4th at 444.

The Complaint asserts that Township officials violated T&R's substantive due process rights by denying the applications to develop the residential project and the industrial warehouse project. The Complaint alleges that the proposed projects were arbitrarily denied, contrary to the discussions which T&R had with Township officials, who represented that the zoning regulations in the BIO district would be flexibly applied.

The Township argues that the claims fail because T&R cannot establish that it had a protected property interest in developing the land for either of the proposed uses.  The Court agrees.  According

12

to the Complaint and the attached exhibits, both of the proposed projects deviated from the existing zoning code, as embodied by the Berlin Township Zoning Resolution.  *See White Oak Prop. Dev., LLC v. Washington Twp., Ohio*, 606 F.3d 842, 853 (6th Cir. 2010) (holding that a plaintiff who sought to construct multifamily dwellings lacked a protected interest "because the Zoning Resolution permits only single family dwellings in residential districts").  With regard to the residential project, T&R sought approval for a density of 6.97 units per acre, in excess of the allowed 4 units per acre on T&R's land.  *See* Doc. 1-6 at PAGEID 362, 385, 387.  With regard to the industrial project, T&R applied to build warehouses under NAICS Code 493, which is not permitted in the BIO District.  *See* Doc. 1-3 at PAGEID 64–80.  T&R had to apply for "variances" because its proposed residential and industrial uses were not permitted under the Zoning Resolution.

The Township boards which considered T&R's applications were not obligated to grant them. Indeed, the Architectural Review Board could only make a non-binding "recommendation" to the Zoning Commission, and the Zoning Commission likewise could only make a non-binding "recommendation" to the Board of Trustees.  *See* Berlin Township Zoning Resolution, Art. 11.08 & Art. 19.06(D).

The Board of Trustees possessed the discretion to deny T&R's proposed uses.  Under the Zoning Resolution, the Board of Trustees had authority to approve or deny an application and, in doing so, they could consider a number of factors, including compliance with the intent and standards of the zoning code, the general welfare of the community, and whether the proposed development was in keeping with the existing land use and development potential of the area.  *See id.*, Art. 11.08 (providing that the Trustees "may approve" a proposed use); Art. 19.06(E).

In the same fashion, the BZA had the discretion to grant or deny variance applications after considering the public interest and the particular conditions and situation of each proposed use or development.  *See id.* Art. 32.06 (providing that the BZA "may" grant variance applications); Ohio Rev. Code § 519.14(B) (providing that a BZA "may" authorize a variance from a zoning resolution after consideration of "the public interest," "special conditions," "unnecessary hardship," and "substantial justice").

Because approval of T&R's plans was subject to the wide discretion of the Trustees and BZA, T&R did not have a legitimate claim of entitlement to its desired uses.  *See Rubicon*, 179 F.4th at 445 (no claim of entitlement where approval of application was "contingent on the subjective judgement of City officials on whether to award a zoning change"); *Triomphe Invs. v. City of Northwood*,

49 F.3d 198, 203 (6th Cir. 1995) (no entitlement where regulation provided that the zoning board "may" grant an application after consideration of certain factors).

T&R nonetheless argue that Township officials made representations during the parties' preliminary discussions about the projects. Officials encouraged T&R to submit its plans and expressed a "commitment" to be "flexible" in applying the zoning standards. Compl., ¶¶ 3, 6, 9. The Court finds, however, that the Complaint does not allege that the parties reached a mutually explicit understanding that the Township would in fact approve the projects. The officials are alleged to have only promised to be flexible when considering the applications – they did not promise a certain result. *See White Oak*, 606 F.3d at 853 ("White Oak's subjective opinions to the contrary do not confer upon it a protected property interest."). Moreover, the Zoning Resolution expressly advised T&R as follows: "No statement by officials of the Township or County made prior to formal submission of a Development Plan and Application to the Zoning Commission shall be binding." *See* Berlin Township Zoning Resolution, Art. 11.02.

Thus, the Court dismisses the substantive due process claims.

### B.      Equal Protection

The Fourteenth Amendment prohibits a state from denying any person within its jurisdiction equal protection of the law. U.S. Const. amend. XIV. The Equal Protection Clause prevents states from making distinctions that "(1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

The Complaint asserts a violation with respect to the third type of distinction. It alleges that the Township has treated T&R in an "unequal manner" as compared to the developer of a "comparable" property in one of the overlay districts of the Berlin Business Park. Compl., ¶ 38, 164. The Complaint states that the other developer was given permission to use its property at a unit-per-acre density which was higher than the density requested by T&R. Specifically, on September 11, 2023 the Board of Trustees approved the Elysian Apartments project at a density of 10 units per acre. *See id.*, ¶¶ 38, 107; Doc. 1-11 at PAGEID 870, 872–873.

The Court finds that the Complaint fails to state an equal protection claim because the comparator – the Elysian Apartments developer – was not similarly situated to T&R. A similarly situated individual or business is one that is similar "'in all relevant respects.'" *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). According to the Complaint, the Township designated certain areas of the BIO and BCO

14

districts as R-10. *See id.*, ¶¶ 39, 83–85; Doc. 1-4 at PAGEID 173, 183; Doc. 1-6 at PAGEID 362; Berlin Township Zoning Resolution, Art. 15.02 & Art. 19.02. Relevant here is that the comparator owned land in an R-10 zone, while T&R owned land in an R-4 zone. *See* Compl., ¶¶ 38, 39; Doc. 1-4 at PAGEID 183; Doc. 1-6 at PAGEID 385; Doc. 1-11 at PAGEID 870 (Sept. 11, 2023 Board of Trustees meeting minutes, describing the Elysian property as being in an R-10 overlay).[4] Thus, in submitting applications to build apartments at a density above R-4, T&R was not similarly situated to the Elysian developer. *See Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. App'x 826, 836 (6th Cir. 2009) ("To satisfy this threshold inquiry, [plaintiff] must allege that it and other individuals who were treated differently were similarly situated in all material respects.").

## V. Fair Housing Act Claims

The FHA's purpose is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, . . . because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). A plaintiff can establish a violation of the FHA by showing either disparate treatment or disparate impact. *See Larkin v. Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir. 1996). T&R asserts both types of claims with respect to the Township's denial of its proposed residential project.

The Court will keep the motion to dismiss under consideration as to the FHA claims. The Court notes that the motion relies in part on the assertion that the Complaint does not establish a prima facie case under the FHA. However, a prima facie case under the FHA need not be established by the complaint. *See Washington v. First Nat'l Bank of Pennsylvania*, 179 F.4th 1008, 1014–15 (6th Cir. 2026); *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012); *Seattle House, LLC v. City of Delaware, Ohio*, No. 2:20-CV-3284, 2021 WL 3284742, at *5 (S.D. Ohio Aug. 2, 2021).

---

[4] The Complaint cites the zoning application for the Elysian project (denoted as "BBP 23-003") as an attachment; however, the application is not attached. *See* Compl., ¶ 82; Doc. 1-11 at PAGEID 872. The Court takes judicial notice of the public records regularly kept by the Berlin Zoning Commission. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). The records show that, consistent with the Complaint's allegations, the BBP 23-003 application was for land in the BCO district and zoned as R-10. *See* Aug. 8, 2023 BZC meeting minutes (available at https://webgen1files1.revize.com /berlintwpoh/BZC%20approved%20minutes%2008-08-2023.pdf?t=202308230935170).

The parties have been conducting discovery and have been given a deadline for filing dispositive motions.  *See* Doc. 96.  The Court defers ruling on the remainder of the motion to dismiss and may elect to instead address the FHA claims in the context of summary judgment.

## VI.     Conclusion

Accordingly, defendants' motion to dismiss (Doc. 70) is denied in part, granted in part, and deferred in part.  The Court denies the motion with respect to issue preclusion and the *Rooker-Feldman* doctrine.  The Court grants the motion with respect to plaintiff's § 1983 claims for violations of its rights to substantive due process and equal protection.  The Court defers ruling on the motion to dismiss as it pertains to the FHA claims.  The Clerk of Court is instructed to terminate Doc. 70 as a pending motion, subject to reactivation by instruction of the Court.


*s/ James L. Graham*
JAMES L. GRAHAM
DATE: July 23, 2026                          United States District Judge

16