**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| T&R Properties, Inc., et al., | : | |
| | : | Case No.: 2:24-cv-03761 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge James L. Graham |
| | : | Magistrate Judge Kimberly A. Jolson |
| Berlin Township, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

***DEFENDANTS' MOTION FOR SUMMARY JUDGMENT***

Defendants Berlin Township, Berlin Township Board of Trustees and Berlin Township Board of Zoning Appeals respectfully request that this Honorable Court grant them summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. Plaintiffs' remaining claim should be dismissed with prejudice. A memorandum in support of this motion follows.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP
*/s/ Cara M. Wright*______________________
PAUL-MICHAEL LA FAYETTE (0067031)
CARA M. WRIGHT (0084583)
ASHLEY HETZEL (0092213)
65 East State Street, Suite 2550
Columbus, OH 43215
T: 614-699-2386-8411 | F: 888-356-3590
Paul.LaFayette@fmglaw.com
Cara.Wright@fmglaw.com
Ashley.Hetzel@fmglaw.com
*Counsel for Defendants*

## MEMORANDUM IN SUPPORT

### I. Introduction and Statement of the Case

This case arises from the lawful and appropriate application of the Berlin Township Zoning Resolution and the Berlin Industrial Overlay to two parcels of land that are owned by Plaintiffs Berlin Industrial, LLC and Berlin Apartments, LLC, and which were to be developed by Plaintiff T&R Properties, LLC. The Berlin Township Zoning Commission (BZC) voted against the applications. The Berlin Township Board of Trustees denied the applications. Plaintiffs then improperly appealed the denials to the Berlin Township Board of Zoning Appeals (BZA), who found it lacked jurisdiction to review the Trustees re-zoning decisions.

Plaintiffs appealed the adverse administrative decisions to the Delaware County Court of Common Pleas and the Fifth District Court of Appeals. Both affirmed the zoning decisions made by Berlin Township.

Concurrently, Plaintiffs filed this lawsuit. Plaintiffs' Amended Complaint asserted four substantive claims alleging: 1) violation of Plaintiffs' right to substantive due process, 2) violation of Plaintiffs' right to equal protection and 3) disparate treatment in violation of the Fair Housing Act, and 4) disparate impact in violation of the Fair Housing Act. *Doc. 31, Amended Complaint.* This Honorable Court dismissed the Plaintiffs' due process and equal protection claims on July 23, 2026. *Doc. 100, Order and Decision.* Following the Court's ruling on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, the only claims that remain pending before this Honorable Court are those asserted under the Fair Housing Act for disparate treatment and

disparate impact (Counts 1 and 2).[1] These claims fail as a matter of law and summary judgment should be granted.

## II. Statement of Undisputed Evidence

### A. Parties and Ownership Issues

Berlin Township is a political subdivision organized under the laws of the State of Ohio. It is governed by a board of township trustees, which consists of three elected members (the "Trustees"). Under Ohio law, and consistent with the limitations imposed by Ohio law, the Trustees have authority to promulgate zoning restrictions through a duly enacted zoning resolution.

The Berlin Township Board of Zoning Appeals (the "BZA") is a statutory entity created under R.C. §519.14 with the power to hear appeals of alleged error in decisions made by administrative officials, authorize variances, and grant or revoke conditional zoning certificates. *Id.* The BZA primarily hears requests for variances. *Doc. 114, Harmon Depo. p. 21-22*.

The Berlin Township Zoning Commission (the "BZC") reviews applications for rezoning and makes recommendations regarding re-zoning to the Board of Trustees. *Doc. 112, Kaplan Depo. p. 126.* The BZC is an advisory body, and the Trustees have authority to abide by the BZC's recommendation or overturn it. *Id.*

Plaintiff Berlin Apartments, LLC is a single purpose LLC that purchased property with the intention of developing an apartment community in Berlin Township, Ohio. *Doc. 103, R.J. Sabatino Depo. p. 19.* Plaintiff Berlin Industrial, LLC is a single purpose LLC that purchased property with the intention of developing an industrial warehouse project *Id. p. 21.* Berlin

[1] Plaintiffs' Second Amended Complaint (Doc. 66) included 8 Counts. However, as this Honorable Court has recognized, Counts Five to Eight "are not substantive, but seek various forms of relief. It necessarily follows that, if the Defendants are entitled to summary judgment on the substantive counts, they are not entitled to the various forms of relief delineated in Counts Five to Eight.

Industrial, LLC does not own any land that was going to be developed to have apartments built on it. *Id. at 23.*

Plaintiff T&R Properties, Inc. is an Ohio corporation that is engaged in property development and property management. *Doc. 103, R.J. Sabatino Depo, p. 10*. It owns, manages and operates apartment communities and commercial properties. *Id.* It also develops single-family home projects and industrial property. *Id. p. 10-11*. T&R Properties intended to manage the residential apartment complex after it was developed. *Id.*

**B. Berlin Zoning Resolution and the Berlin Industrial Overlay**

Ohio law provides townships with the authority to promulgate zoning resolutions. R.C. 519.01, et seq. Consistent with that authority, Berlin Township has issued a zoning resolution that governs property use within the township. *Doc. 103, R.J. Sabatino Depo, Ex. B. Berlin Township Zoning Resolution.* Toward the end of 2020 Berlin created two overlay districts, including the Berlin Industrial Overlay that is at issue in this case. *Doc. 103, R.J. Sabatino Depo, Ex. A, p. 1*. The overlays were "created pursuant to R.C. 519.021(C) to further the purpose of promoting the general public welfare, encouraging the efficient use of land and resources, promoting public and utility services and encourage innovation." *Id.*

As depicted in Chapter 12 of the Berlin Township Comprehensive Plan, Berlin Township permitted various uses within the overlay districts, including R-4 which permitted 4 residential units per acre, R-10 that permitted 10 residential units per acre, and IND that permitted professional, research, office, commercial and light industrial uses. *Doc. 103, R.J. Sabatino Depo, Ex. A, p. 4.* This map from the comprehensive plan shows the Berlin Industrial Overlay and the

Berlin Business Park Overlay and uses permitted within the overlays.

**Berlin Business Park overlay uses**

The following exhibit is intended to show the various uses that are provided in each subarea. It is not part of the adopted overlays but is intended to visually indicate where certain uses can be located.




*Land Use Exhibit provided during original adoption of the overlays.*

| | | |
|---|---|---|
| | R-4 and R-10 | Residential, either at 4 units per acre or 10 units per acre |
| | C/R-10/MU | Commercial or Residential at 10 units per acre |
| | PRO/R-10/MU | Professional/Research/Office and Residential/Mixed Use |
| | PROC | Professional/Research/Office/Commercial |
| | PROC/R-10/MU | Professional/Research/Office/Commercial/Residential/Mixed Use |
| | IND | Professional/Research/Office/Commercial/Light Industrial |

*Doc. 103, DR.J. Sabatino Depo, Ex. A, p. 4.*

**C. The residential parcel at issue in this case.**

Plaintiff Berlin Industrial, LLC and Plaintiff Berlin Apartments, LLC each purchased a parcel of land in Berlin Township that was zoned FR-1, which permitted one residential unit per developable acre. *Doc. 103, R.J. Sabatino Depo. p. 92*. The land was subject to the Berlin Industrial Overlay, a cloud zoning that would enable a property owner to pull down alternative zoning if the requirements of the overlay were satisfied. *Id.* The Berlin Industrial Overlay provided that, if the

overlay were applied, the parcel owned by Berlin Apartments, LLC could be developed with an R-4 density, which would permit four residential units per developable acre. *Id. p. 113-114*.

The Berlin Industrial Overlay was carefully and thoughtfully prepared to responsibly permit growth within the township. As relevant here, the Residential Parcel (the land purchased by Berlin Apartments, LLC to develop apartments) abuts a number of existing single-family homes on one acre lots, as was historically permitted under the township's existing zoning. *Doc. 102, Raehll Depo. p. 137.* As a result, the Residential Parcel was thoughtfully and intentionally zoned with a maximum of four residential units per developable acre to provide a transition from the low density, single-family homes to commercial, industrial or higher density properties. *Id.* The map below, prepared by a witness retained by Plaintiffs, demonstrates the location of the Residential Parcel, circled in red, and the proximity of that parcel to the single-family homes directly east and south of that parcel:



*Doc. 116, Breidenstein Depo. Ex. A, p. 28.* There is no dispute that T&R and Berlin Apartments, LLC knew that the Residential Parcel was zoned for a maximum density of four units per developable acre and that other property in the township permitted higher density. *Doc.103, R.J. Sabatino Depo. p. 113-114.*

It is undisputed that the Berlin Industrial Overlay permits high-density residential uses with a maximum density of up to ten residential units per developable acre ("R-10") on other parcels near that Residential Parcel at issue in this case. *Id,* p. 48-49 (noting that the area shaded in purple has been designated R-10); *Doc. 103, R.J. Sabatino Depo. p. 92.* Plaintiffs concede that a residential apartment project with a density of 6.97 units per acre, as requested by Plaintiffs, would be approved on land zoned R-10. *Id. p.* Furthermore, the Trustees have approved a project for high-density housing on property that has been designated R-10. A project known as "The Elysian" was reviewed and approved at the same time that T&R and Berlin Apartments, LLC's application was denied. *Doc. 103, R.J. Sabatino Depo. p. 139-140*. Unlike the property at issue in this case, the Elysian project was to be built on property that had been zoned R-10 under the Berlin Industrial Overlay. *Doc. 118, Raehll Depo. p. 265.*

**D. T&R and Berlin Apartments submit an application to re-zone the Residential Parcel to develop apartments with a density of 6.97 units per developable acre and the application is denied.**

It is undisputed that while Plaintiffs were in contract to purchase the properties at issue in this case, they were aware that the zoning for the property was FR-1 and, with the application of the Berlin Township Overlay, could be zoned R-4 that would allow for 4 residential units per acre. *Doc. 103, R.J. Sabatino Depo. Vol. 1, pp. 92, 113-114.* Despite knowing that the Residential Parcel was zoned FR-1 and, if the overlay applied, could be zoned R-4, T&R and Berlin Apartments submitted an application seeking to re-zone the property to permit a density of 6.97 units per

developable acre. *Doc. 103, R.J. Sabatino Depo. pp. 90, 92.* Plaintiffs' plan was to develop "luxury" apartments. *Doc. 103, R.J. Sabatino Depo. Vol 1, p. 112*. The apartments were planned to have high-end finishes, such as quartz or granite countertops, luxury vinyl plank flooring, stainless steel appliances and high 9- or 10-foot ceilings. *Id. p. 120*.

The application was first presented to the Berlin Township Zoning Commission. *Doc. 112, Kaplan Depo. p. 130.* Ultimately, the BZC voted against the application. *Id., Kaplan Depo. Ex. G.* The BZC's overriding concern with the application was that it called for density that exceeded what was allowable in that area. *Id. p. 160.*

After the BZC issued its recommendation, the matter was brought before the Board of Trustees. The Board of Trustees voted to deny the application. The Trustees found that the density that had been requested was too high for that transitional area and particular parcel. *Doc. 102, Raehll Depo. p. 146.* Additionally, the Trustees had concerns about the infrastructure of the roads, the quality of the roads, the access for residents turning onto State Route 36/37. *Id.* at 146-147. At the end of the day, the application was denied because the proposed project did not follow the zoning resolution. *Doc. 120, O'Brien Depo. p. 127.*

Plaintiffs appealed this decision to the BZA. The BZA determined that it did not have jurisdiction to review a zoning decision made by the Trustees and dismissed that aspect of the appeal. *Doc. 114, Harmon Depo. p. 129-130.*

## III. Law and Argument

### A. Plaintiffs' Fair Housing Act Claims (Counts One and Two) fail as a matter of law.

The remaining claims in this litigation are those brought pursuant to the Fair Housing Act ("FHA"), Counts One and Two of the Second Amended Complaint. The FHA makes it unlawful to "discriminate against a person in the terms, conditions, or privileges of sale or rental of a

dwelling… because of race, color, religion, sex, familial status or national origin." 42 U.S.C. §3604(b). A plaintiff can establish a violation of the FHA by showing either disparate treatment or disparate impact. *Graoch Associates #33, LP v. Louisville / Jefferson County Metro Human Relations Com'n*, 508 F.3d 366, 371 (6th Cir.2007).

Plaintiffs' claims under the FHA fail. There is no evidence of intentional discrimination. There is no reliable statistical evidence of disparate impact or robust causation between any township policy and any alleged disparate impact. Finally, the undisputed record establishes that the Plaintiffs' zoning application was denied for legitimate, non-discriminatory reasons such as density concerns, infrastructure and safety concerns.

1. <u>Plaintiffs cannot establish a claim under the Fair Housing Act based upon alleged discrimination against individuals that could be characterized as "low income."</u>

Throughout this case, Plaintiffs have frequently referred to the multi-family apartment complex that they intend to develop to be "low-income housing." However, the plain language of the FHA does not prevent discrimination based on "low income." *White Oak Property Development, LLC v Washington Tp., Ohio*, 606 F.3d 842, 851 (6th Cir. 2010). Therefore, Plaintiffs' frequent and repeated references to "low-income housing" and any claim that Berlin discriminated based upon economic standing fails and summary judgment should be granted.

Furthermore, the evidence produced in this case fails to establish that the apartments Plaintiffs intended to develop were, in fact, "low income." Instead, Plaintiffs' corporate representative R.J. Sabatino admitted that he and Plaintiffs' architect had described the project as "luxury apartments." *Doc. 103, R.J. Sabatino Depo. Vol 1, p. 112*. The apartments were planned to have high-end finishes, such as quartz or granite countertops, luxury vinyl plank flooring, stainless steel appliances and high 9- or 10-foot ceilings. *Id. p. 120*. Thus, even if "low income"

was a protected class, the evidence produced in this case would not support a determination that the apartments at issue in this case would constitute "low income" housing.

2. Plaintiffs have not produced evidence to establish a disparate treatment claim under the FHA.

Unable to establish that they were being discriminated against based upon alleged provision of low-income housing, Plaintiffs next assert that they were discriminated against based upon race and/or familial status. There is similarly no evidence to support that Berlin acted with discriminatory animus in denying the zoning application submitted by T&R Properties and Berlin Apartments, LLC.

To prevail upon a disparate treatment claim under the FHA, a plaintiff must show proof of intentional discrimination. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012). This can be established through direct evidence or through circumstantial evidence using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the burden-shifting analysis, Plaintiffs must establish that unlawful discrimination was a motivating factor in the decision to deny a zoning application. *Smith & Lee Associates, Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 790 (6th Cir. 1996).

Once Plaintiffs establish the prima facie case, the burden shifts to Defendants to show that they would have made the same decision if they had not been motivated by an unlawful purpose. *Id*. If Defendants meet this burden, the burden shifts back to Plaintiffs to establish that the proffered reason is pretextual. *Graoch Associates #33, LP v. Louisville/Jefferson County Metro Human Relations Com'n*, 508 F.3d 366, 371 (6th Cir. 2007).

Plaintiffs have not produced any evidence that would establish that any of the Berlin Township Trustees intentionally discriminated against any protected class or discriminated against anyone in any way.

Throughout this litigation, when asked about evidence related to intentional discrimination, Plaintiffs have cited to a statement *made by a member of the public* that permitting the apartments would create a "ghetto." A statement by a member of the public, however, cannot be utilized to impute discriminatory intent upon Berlin Township. It is well established that statements made by private individuals are not attributable to the governmental entity. *City of Cuyahoga Falls, Ohio, v. Buckeye Community Hope Foundation*, 538 U.S. 188, 196-197 (2003). Furthermore, there is no evidence that any member of the Board of Trustees relied upon this statement in voting to deny Plaintiffs' application for re-zoning.

The evidence produced in this matter establishes that Berlin Township had legitimate, non-discriminatory reasons to deny the application. As described above, Berlin Township intentionally zoned this specific piece of property to serve as a transition from the existing, rural single-family homes (that were directly adjacent to and abutting the proposed apartments) to the more varied uses, including high density apartments that would be permitted within the Berlin Industrial Overlay. As evidenced by the zoning resolution and the map designating the R-4 and R-10 parcels in the Overlay, the R-4 parcels abut existing single-family homes while the R-10 parcels abut undeveloped property. As such, the Trustees conscientiously and deliberately – i.e., rationally – evaluated and adopted the Overlay zoning for the R-4 parcels to have less density as a means of transition from the existing residential properties to more dense residential apartments that would serve as a buffer to the industrial zoned parcels. Correspondingly, the R-10 parcels (most westward in the Overlay map) were higher density because there were no existing residential properties abutting the R-10 parcels. Thus, there was a legitimate and non-discriminatory rationale to the Overlay zoning.

Further, the Trustees indicated concerns related to infrastructure and safety particularly as it applied to the impact that higher density would have on the existing residents and new residents accessing State Route 36/37. Plaintiffs cannot dispute that these are legitimate, non-discriminatory reasons. Indeed, Plaintiffs' zoning expert Thomas Breidenstein agreed that each of these reasons expressed by Berlin, in denying Plaintiffs' application, were legitimate concerns. *Doc. 106, Breidenstein Depo. p. 66-67*.

Plaintiffs in this case cannot demonstrate that these proffered reasons were pretext for discrimination. To establish pretext, the Plaintiffs must show both that: (1) the proffered reason was false and (2) that discrimination was the real reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515-16 (1993). There is simply no evidence to support a finding of pretext. Indeed, Plaintiffs' zoning expert recognized the legitimacy of the Trustees' considerations.

3. <u>The evidence produced in this case is insufficient to establish disparate impact under the FHA.</u>

Courts apply a different burden-shifting framework when adjudicating disparate impact claims asserted under the FHA. *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 527 (2015). To establish a claim, Plaintiffs must first make a prima facie showing of disparate impact. That is, Plaintiffs have the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect. *Id., citing* 24 CFR §100.500(c)(1).

After Plaintiffs establish the prima facie showing of disparate impact, the burden shifts to Defendants to prove that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests. *Id, citing* 24 CFR §100.500(c)(2). Once Defendants have satisfied the burden at step two, Plaintiffs may prevail upon proving that the substantial, legitimate,

nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect. *Id., citing* §100.500(c)(3).

a. Plaintiffs cannot establish a *prima facie* case for disparate impact discrimination.

Plaintiffs in this case cannot establish the *prima facie* case. Plaintiffs asserting a disparate impact claim under the FHA must (1) identify and challenge a specific housing practice and then (2) show an adverse effect by offering statistical evidence of a kind or degree sufficient to show that the practice in question has caused the adverse effect in question. *Graoch*, 508 F.3rd at 377.

Plaintiffs cannot establish either of these elements. "A disparate-impact claim that relies on statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Texas Dept of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 541 (2015). Plaintiffs cannot identify any specific housing practice that results in a disparate impact. The denial of a single zoning application for 6.97 units per acre is not itself proof of a discriminatory housing policy.

Throughout this litigation Plaintiffs have asserted that Berlin does not permit high-density residential housing and that this results in a disparate impact upon minorities and families with children. This is not accurate. The undisputed evidence produced in this case establishes that the Berlin Industrial Overlay has areas of the township where zoning permits ten units per developable acre. *Doc. 103, R.J. Sabatino Depo. p. 45-46*. Furthermore, the undisputed evidence establishes that Berlin has approved a high-density apartment development, the Elysian. *Id. p. 65-66.* Thus, any contention by Plaintiffs that Berlin does not permit high-density residential apartments is factually inaccurate. There is no official policy causing any alleged disparate impact and, for this reason alone, the disparate impact claim fails.

Plaintiffs similarly have failed to produce any reliable statistical evidence that the challenged practice (which, of course, does not actually exist) caused a significant adverse effect on a protected class. To prevail upon a disparate impact claim under the FHA, the Plaintiffs must establish a causal connection between any alleged policy and the disparity. "A robust causality requirement ensures that racial imbalance does not without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities that they did not create." *Texas Dept. of Housing*, 576 U.S. at 542. Importantly, governmental or private policies are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary and unnecessary barriers." *Id.* at 543. Furthermore, governmental entities must not be prevented from achieving legitimate objectives, such as ensuring compliance with health and safety codes. *Id.*

Plaintiffs have not produced any statistical evidence that the density requirement for the Residential Parcel caused any statistical disparity within Berlin Township with respect to racial minorities or families with children. Plaintiffs' assertions are further undermined by Plaintiffs' factual allegation that Berlin Township approved an application for multi-family housing with a density of ten units per acre at another location. Plaintiffs cannot establish a prima facie case for disparate impact and, as a result, summary judgment should be granted. Plaintiffs have not produced any evidence that would establish a disparate impact on families with children and have not produced any evidence that would support a finding of a causal connection between any township policy and the types of families that have moved into the township.

It is anticipated that Plaintiffs will rely upon the testimony of historian Allan Lichtman in an attempt to establish their *prima facie* case. This reliance is misplaced as Lichtman's testimony

fails to establish the robust causality or demonstrate any statistical evidence that Berlin's zoning policies have resulted in a disparate impact.

Lichtman's opinions are premised upon the assertion that Berlin does not permit high-density apartments. In making that assertion, Lichtman conceded that he had never verified the zoning that is permitted in the township and does not know whether R-10 zoning is available in Berlin. *Doc. 105, Lichtman Depo. p. 103.* Lichtman's opinions, therefore, ignore the undisputed evidence that undermines his entire opinion. Berlin's zoning resolution permits R-10 zoning and Berlin has approved a high-density apartment complex.

Lichtman's testimony ignores the Zoning Resolution and Berlin's actual zoning policies and, instead, advances a faulty legal conclusion that Berlin's zoning has created a disparate impact based upon hypothetical, subjective and speculative theories, rather than actual reliable evidence. Disparate impact liability cannot be based upon speculation concerning hypothetical future residents. Lichtman's testimony is nothing more than unsupported demographic assumptions that Blacks and Hispanics are more likely to have low incomes and that people with low incomes are more likely to rent apartments. *Doc. 105, Lichtman Depo. p. 94.*

There is no testimony, however, that would connect Berlin's zoning resolution- which permits high-density, R-10 apartments in other areas of the Township- to any perceived disparate impact upon racial minorities or families with children. Lichtman admitted at deposition that he has no evidence or information regarding who would have rented the proposed apartments. *Doc. 105, Lichtman Depo. p. 65*. He did not do any formal modeling to determine who would move into the apartments and did not have any information regarding individual renters. *Id.* 86, 91.

Moreover, while T&R manages apartment communities across Central Ohio, Lichtman did not examine the racial makeup or evaluate the diversity of those comparable complexes. *Doc. 105,*

*Lichtman Depo. p. 90*. In other words, there is no evidence that Lichtman's theory - that minority populations have lower income and therefore live in apartments - actually plays out in Delaware County. Furthermore, while Lichtman asserts that people on the lower end of the income median live in the Worthington Arms area of Berlin Township and infers that, as a result, more minorities live there, he admitted that he does not have any actual knowledge of racial makeup of Worthington Arms and that his assertions are based upon nothing more than "inferential analysis." *Id.* at 102.

There is, quite simply, no evidence that any Black or Hispanic individuals would have rented units at the proposed development or that Berlin's zoning policies have had disparate impact upon any members of a protected class. Also, and notably, despite the assertion that the denial of Plaintiffs' zoning created a disparate impact on racial minorities, Mr. Lichtman intentionally did not include minority groups such as Asians in his analysis on the basis that "most critically, they [Asians] don't have the same disabilities when it comes to income and wealth." *Doc. 105, Lichtman Depo. p. 41.* Thus, at its core, Mr. Lichtman's analysis is not based on racial discrimination as much as it is based on income and wealth. However, the FHA does not recognize discrimination based on "low income" status.

Accordingly, the disparate impact claim based on racial discrimination is not supported by a robust causation analysis and, instead, is predicated on speculative assumptions. Moreover, as demonstrated by Mr. Lichtman's testimony, the purported disparate impact at most is in relation to income. As such, Plaintiffs' claims predicated on racial disparate impact are unsupported and must be dismissed.

Plaintiffs further allege disparate impact based upon familial status. Plaintiffs have produced no household composition data, no evidence showing families with children would have

rented the units and no statistical showing that the zoning decision disproportionately impacted families with children. Thus, any claim premised upon disparate impact upon familial status discrimination must be dismissed.

b. Berlin had legitimate, non-discriminatory reasons for denying Plaintiffs' application and there is no evidence that these reasons were pretextual.

As described above, Berlin Township had multiple, legitimate, non-discriminatory reasons for denying the application to re-zone the Residential Parcel. The Residential Parcel was intentionally, thoughtfully and purposefully zoned R-4 to provide a transition from the existing rural, single family one-acre homes to the more densely populated, industrial and commercial areas contemplated when the Berlin Industrial Overlay was enacted. The Trustees found that the density that had been requested was too high for that transitional area and particular parcel. *Doc. 102, Raehll Depo. p. 146.* In addition to this, the Trustees had concerns about the infrastructure of the roads, the quality of the roads, and issues related to residents' access and ability to turn onto State Route 36/37. *Id.* at 146-147.

Plaintiffs have not produced any evidence that these legitimate, non-discriminatory reasons are pretext for discrimination. Plaintiffs' claims for disparate impact discrimination fail.

**B. Plaintiff Berlin Industrial, LLC does not have standing to assert a claim under the FHA.**

Based upon the plain language of Plaintiffs' Complaint, it is unclear which of the Plaintiffs are asserting claims under the Fair Housing Act. To the extent that Plaintiff Berlin Industrial, LLC is seeking to assert such claims, the claims fail as a matter of law, because it does not have standing.

To establish standing, a plaintiff must "have (1) suffered an 'injury in fact' that (2) was caused by the defendant and (3) likely would be redressed by the judicial relief he requests." *Merck v. Walmart, Inc*, 114 F.4th 762, 772 (6th Cir. 2024). There is no evidence that Berlin Industrial,

LLC suffered any injuries related to the Fair Housing Act and the Residential Parcel. Berlin Industrial, LLC does not own the Residential Parcel and did not submit any applications to Berlin Township in relation to the Residential Parcel. *Doc. 103, R.J. Sabatino Depo. p. 21-23.* Thus, to the extent that it has asserted claims under the FHA, those claims fail as a matter of law.

**C. Defendants BZA and BZC are not *sui juris*.**

It is axiomatic that a party to litigation must have capacity and rights to be sued. Departments of a political subdivision, like a township board of zoning appeals or a board of zoning commission, are not sui juris. *Mollette v. Portsmouth City Council*, 2006-Ohio-6289 (4th Dist. 2006). Ohio law is clear that township boards of zoning appeals and boards of zoning commissions do not have legal capacity to sue and be sued. *See Ruff v. Jackson Township*, Case No. 2:23-cv-2916; 2026 WL 832536 (S.D. Ohio) (finding that the board of zoning appeals is a subdivision of the township and therefore not *sui juris*); *Duke's K9 Dash N' Splash, LLC v. Zizka*, Case No. 5:234-cv-0218, 2024 WL 3965599 (N.D. Ohio Aug. 28, 2024) (same). For this additional reason, the claims asserted against the BZA and the BZC should be dismissed.

**IV. Conclusion**

For these reasons, Defendants' Motion for Summary Judgment should be granted and the remaining claims asserted against them should be dismissed with prejudice.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

*/s/ Cara M. Wright*

PAUL-MICHAEL LA FAYETTE (0067031)
CARA M. WRIGHT (0084583)
ASHLEY HETZEL (0092213)
65 East State Street, Suite 2550
Columbus, OH 43215
T: 614-699-2386-8411 | F: 888-356-3590
Paul.LaFayette@fmglaw.com

Cara.Wright@fmglaw.com
Ashley.Hetzel@fmglaw.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed and served on August 31, 2026, via email to the following:

Andrew L. Margolius
Emily E. Warren
Margolius, Margolius and Associates
55 Public Square, Suite 1770
Cleveland, Ohio 44113
andrew@margoliuslaw.com
*Attorneys for Plaintiffs*

Joshua S. Nagy
465 Metro Place, Suite 430
Dublin, OH 43017
jnagy@wesplaw.com
*Attorney for Plaintiffs*

*/s/ Cara M. Wright*______________________
PAUL-MICHAEL LA FAYETTE
CARA M. WRIGHT