**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| T&R PROPERTIES, INC., *et al.* | : | |
| | : | Case No. 2:24-cv-3761 |
| Plaintiffs, | : | |
| | : | Judge James L. Graham |
| v. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| BERLIN TOWNSHIP, *et al.* | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants' Motion should be denied because Defendants have not carried their burden of showing the absence of a genuine dispute of material fact. Their Reply Brief does not cure that failure. However, it raises three matters for the first time that are addressed here. Defendants newly assert a First Amendment rationale for the Trustees' response to public comment; a reading of *Southwest Fair Housing Council* that the decision will not bear; and a characterization of Dr. Allan Lichtman's testimony that the deposition pages the Reply cites do not contain.

## I. ***Southwest Fair Housing Council*** **Establishes the Prima Facie Showing Defendants Dispute and Identifies the Burden They Have Not Carried.**

Defendants cite *Southwest Fair Housing Council* three times: for the proposition that a challenge to the denial of one application "is not a housing policy" (ECF No. 139 at 6, PageID 7923); for "unrelated or uncontrollable" determinants (*id.* at 8, PageID 7925); and for the proposition that a defendant may prevail without offering rebuttal statistics (*id.*). The decision will not bear the first two propositions, and the third proves the opposite of what Defendants suggest.

The Ninth Circuit held that "[t]he district court held that Appellants failed to demonstrate robust causality. We hold that the district court erred in that judgment," and that "[t]he district court erred in holding that Appellants failed to establish a prima facie case of disparate-impact discrimination under the FHA." 17 F.4th at 962. Like *Southwest Fair Housing Council*, this Court should find that the Plaintiff's unrebutted expert report establishes a prima facie showing and the analysis proceeds to the second step, where the burden is the Township's alone to establish business necessity which they have failed to attempt to meet. Plaintiffs have established a prima facie case with regard to both intentional and disparate impact FHA violations, yet Defendants continue to argue disputed facts and inferences regarding pretext and business justification.

*Southwest Fair Housing Council* (and *Graoch*) does not support the proposition that a challenge to the denial of one application "is not a housing policy" (ECF No. 139 at 6, PageID 7923), as Defendants claim. The language Defendants reach for, that a decision to build in one location rather than another "may not be a policy at all," belongs to *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015), and describes a one-time siting decision. Plaintiffs' claim here is not that a single vote is the policy; it is Berlin's application of the multi-layered zoning approach, with a discretionary four-unit density limitation, all within an even broader zoning scheme, which violates the FHA. This zoning scheme has produced no completed apartment development in Berlin, reducing housing availability for Blacks and families with children (and Black families), all while single-family approvals and variances were issued as a matter of course. For the same reason, *Oliver v. Etna Township*, on which the Defendants rely for the materiality of Plaintiffs' asserted disputes, turned on an evidentiary record unlike this one: the court there found no departure from ordinary procedures or substantive criteria and no evidence that the zoning body considered the plaintiffs' race, **and** it had

no expert statistical analysis before it. 731 F. Supp. 3d 901, 918 (S.D. Ohio 2024). Here the application was denied by resolution after a full hearing sequence, Plaintiffs' expert analysis stands unrebutted, and the record includes the remark described below. Defendants also cites to *Graoch Associates #33* for the proposition that a specific policy is needed rather than a single act. *Graoch* does not stand for that proposition. That case focused on whether there was a business necessity to justify a decision challenged as having discriminatory impact, finding insufficient evidence in the record of business necessity and suggesting that an absence of business necessity violates the FHA and remanding the case for resolution of a business necessity examination. *Graoch Associates 33 LP* 508 F. 3d 366, 394 (Sixth Cir. 2007). Defendants' business necessity of child safety is not identified with specificity in its briefing, and its rural character defenses are unsupported by documentation, objectivity or concurrent record cites. In fact, Defendants' briefing identifies the policy (not a single act) as Berlin's "Overlay," while not addressing the fact that the "overlay" has resulted in no apartments actually being built in Berlin Township.

## II. Plaintiffs do not Contend the Township was Required to Silence any Speaker – Only that the Circumstances of Racially Biased Statements and Trustee Acquiescence Amounts to Coded Language and a Zoning Scheme Used to Perpetuate a Non-Black Community.

The Defendants' Reply Brief asserts that excluding, removing, or admonishing speakers based on content or viewpoint "may subject the Township to liability for First Amendment violations." ECF No. 139 at 4, PageID 7921. Plaintiffs have never argued otherwise. They do not contend the Trustees were obliged to eject the speaker, cut off his comments, or discipline him for them. They could however disassociate themselves from the racist comments, or provide some – any – level of indicia they disagreed. Plaintiffs' expert disclaimed that position under oath. Lichtman Dep. 124:11–13, ECF No. 105, PageID 3973 ("I'm never saying they should have thrown them out of the community. That's nothing that I've implied or said.").

Plaintiffs' argument is evidentiary. *Arlington Heights* directs the court to both circumstantial and direct evidence of intent, including the historical background of the decision, the specific sequence of events leading up to it, departures from normal procedural and substantive criteria, and contemporaneous statements of the decision-making body. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68 (1977). The Sixth Circuit likewise recognizes that discriminatory public opposition does not by itself establish municipal liability; the question is whether the decisionmakers themselves discriminated. *Get Back Up, Inc. v. City of Detroit*, 725 F. App'x 389, 393 (6th Cir. 2018). *Get Back Up, Inc.* fails to stand for the position Defendants' assert. Therein, the Court only considered whether it could grant summary judgment without considering Defendants' rebuttal. The Court held that *Get Back Up, Inc.* met its burden, but the City "must be given an opportunity to show that its decision was not the result of animus." *Id*. Plaintiffs ask nothing more than that the Trustees' conduct be weighed together with the rest of that evidence.

The conduct at issue is a matter of record. At hearing, a resident stated that this apartment complex will create "a ghetto" while another citizen stated crime and violence would occur with the apartment development. (Trustees' Minutes, 12 June 2023, at 7, 9 (Berlin Twp 002126), ECF No. 137-11, PageID 7783). No Trustee objected to the remark or asked for clarification or correction. (*Id.* at 7–8, PageID 7783–84). The Trustees then denied the application, with the minutes recording that "[a]ll three trustees agreed that it was a good plan but the density was too high." *Id.* at 8 (Berlin Twp 002127), PageID 7784. The Court is not being asked to isolate the resident's racial statements as the core basis of showing Berlin Township's discriminatory intent and incorporation of racially coded language; it is but one circumstance in the intent inquiry. *United States v. City of Birmingham*, 538 F.Supp. 819, 829 (E.D.Mich. 1982)); *Guimaraes v.*

*Supervalu, Inc*., 674 F.3d 962, 974 (8th Cir.2012). Defendants do not rebut that evidence that decisionmakers knowingly responded to others' discriminatory motivations may bear on intent. *Lawrence County Recovery, LLC v. Village of Coal Grove*, 784 F. Supp. 3d 1050, 1065 (S.D. Ohio 2025) (denying dismissal of Fair Housing Act and ADA claims).

Here, the backdrop is that the Trustees state they felt this was a good project, they had already obtained a reduction in density and the number of apartments, they had created buffer zones, but then they fictionalized child safety issues to insist upon an extraordinary low, un-viable density, and sidestepped the racially laced comments at public hearing. Defendants' briefing also cites to preserving the rural character of the township, a subjective uncited rationale impossible to rebut but an issue which is inherently pretextual: arguably, "preserving the rural character" only subtly masks an intent to keep Blacks and Black families out. Whether that inference should be drawn from the complete record is a question for the factfinder, and it is distinct from whether the Township could constitutionally silence a speaker.

In fact, an examination of the Defendants' Reply Brief's citation to Trustee Raehll does not supply the answer it suggests. The Reply states that Ms. Raehll "did not agree with the comment and understood the Trustees' role as listening to, rather than debating with, residents." ECF No. 139 at 5, PageID 7922. Yet her fellow trustee, O'Brien, stated Ms. Raehll's job was not to simply listen but to intervene (*O'Brien Depo*., 26 Feb. 2026, at 274-275). Trustee O/Brien avoided the inferences associated with the "ghetto" comment when he stated at deposition that a ghetto was simply a neighborhood with older cars. (*O'Brien Deposition*, at 203-205).

Further, despite Defendants' assertions in its Reply Brief, Plaintiffs do not attempt to transform legitimate concerns about density and child safety into animus. Instead, Plaintiffs examined the rationale of child safety behind the density decision to determine business

justification. The fictious child safety rationale for density, and the racially coded language at hearing, establish grounds for pretext under summer judgment standards, showing an underlying intent to create a zoning scheme to keep out Blacks and families.

## III. The Deposition Pages the Reply Cites to Does Not Contain the Testimony Attributed to Them.

When conflating a lack of discrimination towards Asians with a lack of discrimination towards Blacks, the Reply Brief states that Dr. Lichtman "excluded Asian residents from his analysis because they 'don't have the same disabilities when it comes to income and wealth' — confirming that his theory tracks income, not race," citing deposition pages 65, 86, and 91. ECF No. 139 at 6–7, PageID 7923–24. The quoted testimony appears at page 41. Lichtman Dep. 41, ECF No. 105, PageID 3890. He gave two reasons there, not one: that Asian households' income is "as high or higher than the white population," and that Asian residents "are not underrepresented in Berlin Township the same way Blacks and Hispanics are." *Id.* The Reply omits the second reason.

The pages the Reply does cite to address other subjects. Page 86 reads: "I didn't actually do a formal modeling, but I looked at the relevant information." *Id.* at 86, PageID 3935. Page 87 describes the analysis he did perform — "an analysis of the availability to Blacks, Hispanics, and low-income, less affluent families with children." *Id.* at 87, PageID 3936. Page 91 is his answer to the question of who would rent the units, not a concession: the analysis concerns "discrimination against groups of people, not against any particular individual." *Id.* at 91, PageID 3940. He rejected the substitution of income for race directly. *Id.* at 93–94, PageID 3942–43. The Defendants seem to approach Plaintiffs' expert's opinions as an opportunity to poke holes rather than look at the expert's core findings that Blacks and families have been disproportionately impacted by Berlin's zoning policies, and ignore that their own expert opinion agrees with Plaintiff's expert.

A disparate-impact case concerns the initial showing of the effects of a facially neutral policy on a protected class rather than the defendant's state of mind. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 539 (6th Cir. 2014). The inquiry therefore does not turn on a focus on other minorities, or naming the individuals who would have occupied housing that was never built. At best, Defendants can attempt to show that keeping out Blacks or families is negated by allowing Asians to increase in Berlin but this argument is a strongly disputed issue of fact.

## IV. The Remaining Decisions Cited for the First Time in Reply do not Reach the Questions Presented.

*Mensie* is an out-of-circuit appeal under 42 U.S.C. § 1983 by a homeowner denied rezoning to operate a beauty salon from her residence; the court addressed equal protection and due process, not the Fair Housing Act's statistical proof or its burden-shifting framework. It does not detract from the case law in *Birmingham* and *Guimaraes*, supra, that allows a Court to look through municipal leadership's avoidance of racial language by citizens when implicitly furthering that bias. The case *Get Back Up* is unpublished and not binding. Sixth Cir. R. 32.1(b). The litigation occurred in an injunction setting with a weighing of evidence not comparable to the summary judgment posture in this matter. *Budnick* is out of circuit. Each rests on a record containing a documented and specific justification for the challenged action — the showing Defendants have not made here.

## V. Defendants' Citations to Lack of Causality Misleads

Despite not providing its own expert report disputing Plaintiff's expert report's causality showing, Defendants still assert no causality exists. They do not directly review Dr. Lichtman's through statistical analysis and do not provide documentary rebuttal support for this proposition.

Defendants also seek to undermine *Pickett* yet this case remains instructive in this case. Defendants are trying to turn robust causation into a requirement that Plaintiffs disprove every

other possible cause of the disparity; the Court in *Pickett* held that robust causation "does not amount to a requirement that Plaintiffs categorically disprove the relevance of all other factors." *Pickett v. City of Cleveland*, No. 1:19-cv-2911, 2023 WL 11987525, at *12 (N.D. Ohio Sept. 29, 2023). Here, the absence of a defense expert report countering Dr. Lichtman's statistical based report is compelling. Rather than address the report itself, Defendants seek to wholly ignore its findings at the summary judgment level. Moreover, Defendants' arguments fail as *Avenue 6E* requires alternative housing to be "truly comparable" and in "close proximity" in a disparate impact analysis. Yet, Defendants point to Berlin's R-10/Elysian complex as zoning only in a hypothetical manner, with no apartments ever likely to be built. In short, the fiction of Elysian does not show actual comparable apartment availability, and it does not cure the denial of apartment density on T&R's parcel, or the lack of feasible housing under R10 density requirements. See, *Avenue 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 511-12 (9th Cir. 2016). In short, a detailed unrebutted expert report demonstrates causality, and Defendants offer no evidence or report in opposition except for an apartment project that will never be built. The Elysian project actually supports the position that Berlin manipulates its zoning scheme to keep out Blacks and families by severely imposing extraordinary restrictive apartment density requirements.

**VI. Conclusion**

Defendants have not carried their burden under Rule 56, and nothing raised in their Reply supplies what is missing. For these reasons, and those stated in Plaintiffs' Memorandum in Opposition, Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Andrew L. Margolius
Andrew L. Margolius (0003402)

Emily E. Warren (0080174)
MARGOLIUS, MARGOLIUS AND ASSOCIATES
55 Public Square, Suite 1770
Cleveland, Ohio 44113
andrew@margoliuslaw.com

/s/ Joshua S. Nagy (0097099)
WESP BARWELL BERARDINO, LLC
465 Metro Place, Suite 430
Dublin, Ohio 43017
jnagy@wesplaw.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2026 the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Paul-Michael La Fayette
Cara M. Wright
Ashley B. Hetzel
FREEMAN MATHIS & GARY, LLP
65 East State Street, Suite 2550
Columbus, Ohio 43215
Paul.LaFayette@fmglaw.com
Cara.Wright@fmglaw.com
Ashley.Hetzel@fmglaw.com
Counsel for Defendants

/s/ Andrew L. Margolius
Andrew L. Margolius